**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MCLEODUSA TELECOMMUNICATIONS SERVICES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | **Misc. Action No. _____** |
| | ) | |
| v. | ) | **Related to** |
| | ) | **Civil Action No.: 06-CV-35** |
| QWEST CORPORATION AND QWEST COMMUNICATIONS CORP. | ) | **United States District Court** |
| | ) | **For the Northern District of** |
| Defendants. | ) | **Iowa (Cedar Rapids Division)** |
| | ) | |

**PLAINTIFF MCLEODUSA'S MOTION TO COMPEL**
**AND TO ENFORCE SUBPOENA**

Plaintiff McLeodUSA Telecommunications Services ("McLeodUSA") hereby moves pursuant to Fed. R. Civ. P. 37 and 45(c)(2) for an order compelling discovery from a third-party contractor retained by Defendants Qwest Corporation ("Qwest-RBOC" or "QC") and Qwest Communications Corporation ("Qwest-IXC" or "QCC") (together, "Qwest") to perform invoice auditing services.

Qwest's counsel has been sloppy and disingenuous with Qwest's privilege, first disclaiming an attorney-client relationship with TEOCO so that McLeodUSA would have to pursue formal third-party discovery, but then asserting an attorney-client relationship when McLeodUSA sought disclosure of communications with an unrepresented party. Qwest and TEOCO have asserted that communications between Qwest's lawyers and TEOCO are shielded from disclosure by the attorney-client privilege. On that ground, TEOCO has refused to produce documents responsive to the subpoena that McLeodUSA served on TEOCO, and TEOCO has refused to give deposition testimony relating to TEOCO's communications with Qwest's outside counsel during a period in which it is undisputed that Qwest's outside counsel

did not represent TEOCO. Here, because Qwest's outside counsel did not represent TEOCO at the time of the relevant communications, did not have any expectancy that TEOCO was or would become a client, and in fact, still does not represent TEOCO today, the attorney-client privilege cannot shield from discovery the attorneys' communications with TEOCO.

## I.    FACTUAL BACKGROUND.

McLeodUSA and Qwest are telecommunications companies. The underlying litigation pending in the United States District Court for the Northern District of Iowa concerns billing and other disputes between the carriers. TEOCO is the company that Qwest hired to review and audit vendor invoices, including invoices sent to Qwest by McLeodUSA. It also is responsible for creating several of the spreadsheets on which Qwest relies for its damages calculations in this case. McLeodUSA served subpoenas on TEOCO and two of its employees for testimony and documents, and a deposition was taken of one TEOCO representative, Derek Canfield, on December 11, 2007. True and correct copies of the subpoenas and correspondence to TEOCO are attached as Exhibit A.

### A.    TEOCO is closely involved with Qwest's damages claims in the present litigation, but TEOCO is an independent contractor.

On September 25, 2007, following a large round of depositions on both sides, McLeodUSA requested dates for depositions of several additional Qwest witnesses, and also requested depositions of select TEOCO personnel and a Rule 30(b)(6) deposition of TEOCO itself. In light of the close relationship between Qwest and TEOCO, McLeodUSA asked whether Qwest would be producing the TEOCO witnesses pursuant to notice, or would require McLeodUSA to pursue formal third-party discovery pursuant to subpoena. On September 28, as part of an ongoing exchange of e-mail, Qwest's counsel advised that "I also need to check with Qwest and TEOCO to see if you have to serve TEOCO a Rule 45 subpoena. I'll report

- 2 -

back to you when I have some information." *See* Ex. B.  During a conference call among

outside counsel on October 15, 2007, Qwest's counsel advised that because they had not heard

from TEOCO's counsel, McLeodUSA should subpoena TEOCO.  The next day, McLeodUSA

confirmed that it would subpoena TEOCO if necessary, but requested that Qwest advise when

TEOCO responded to McLeodUSA's original request. *See* Ex. C.

> **B.**      **Qwest's outside counsel did not represent TEOCO at the time**
> **of the communications at issue.**

By November 5, 2007, Qwest still had not advised that it could produce TEOCO

witnesses pursuant to deposition notice.  McLeodUSA renewed its request that day for

information whether Qwest would be willing to produce TEOCO witnesses. *See* Ex. D. (Nov.

5, 2007 e-mail).  On November 6, McLeodUSA again asked whether Qwest would be

producing the TEOCO witnesses pursuant to deposition notices, or McLeodUSA would be

required to subpoena their depositions.  Qwest's counsel responded on November 7, 2007,

advising that he did not represent TEOCO, and would not be able to produce TEOCO

witnesses for deposition: "Please let me have a copy of whatever subpoena you serve on

TEOCO.  I have not been authorized by TEOCO to accept service." *See* Ex. D (Nov. 7, 2007

e-mail).

Shortly thereafter, also on November 7, McLeodUSA served TEOCO with a subpoena

for testimony and production of documents, with placeholder dates for deposition and

production pending discussions with TEOCO's counsel.  McLeodUSA reached TEOCO's in-

house counsel by telephone that same evening to coordinate TEOCO's response.  On

November 9, 2007, following formal service of the subpoena on TEOCO by private process,

Qwest's outside counsel confirmed (again) that prior to the subpoena, his firm did not

represent TEOCO.  Specifically, he advised that TEOCO asked him to coordinate TEOCO's

subpoena response, and that accordingly, he would need some time to manage the

administrative process of obtaining Qwest's permission for the new representation, opening a

new client/matter number, and the like. *See* Ex. E.

C.      **McLeodUSA's subpoena to TEOCO commanded testimony**
        **and documents concerning communications between TEOCO**
        **and Qwest's outside counsel.**

On the basis of Qwest's counsel's representation that his firm did not represent

TEOCO, McLeodUSA drafted the deposition topics to account for communications between

Qwest's counsel and TEOCO.  Specifically, topic 6 commanded deposition testimony on

"[TEOCO's] discussions with counsel for Qwest in connection with any disputes at issue in the

Litigation." *See* Ex. A, Schedule A.  Deposition topic 7 commanded testimony on TEOCO's

targets, goals, and hypotheses for conducting any of the damages analyses or calculations that

it performed for Qwest.  Again on the basis of Qwest's counsel's representation that his firm

did not represent TEOCO, McLeodUSA included within that topic not just TEOCO's targets

and hypotheses, but also those of Qwest or Qwest's counsel of which TEOCO was aware.  *Id.*

At the deposition, Qwest's counsel instructed TEOCO not to respond to questioning on

these topics, invoking the attorney-client privilege.  As a result, McLeodUSA was not able to

obtain testimony on even the most fundamental questions relating to the damages calculations

that TEOCO prepared for Qwest, such as what TEOCO understood it was supposed to be

doing:

Q.      What is the analysis that's being reflected and reported in this spreadsheet?

A.      The amount of charges that McLeod has billed to Qwest for the interstate
jurisdiction for wireless originated traffic.

Q.      And what instructions did TEOCO receive when it was given this assignment?

MR. VOGEL [Qwest counsel]:  Hang on.  I'm going to object to the form of the
question, "instructions."  I'm going to object to the extent the question is asking you to
reveal your communications with counsel, but if you can answer otherwise, go ahead.

- 4 -

THE WITNESS:    I believe this was all pertinent to discussion with counsel.

BY MR. FITCH [McLeodUSA counsel]:

Q.    What counsel are you referring to in that regard?

A.    Our outside counsel, Mr. Vogel and his firm.

*    *    *

Q.    Do you know whether TEOCO at that point in time had engaged Mr. Vogel's firm to represent TEOCO?

*    *    *

THE WITNESS:    It's my understanding that TEOCO has not engaged Mr. Vogel's firm, rather is supporting Qwest in its relationship with Mr. Vogel's firm.

BY MR. FITCH:

Q.    ***What was your understanding of the analysis that you were to make in this spreadsheet?***

MR. VOGEL: I'm going to object because, again, that calls for privileged communications. . . .

Ex. F, Deposition of TEOCO through its designee Derek Canfield, Dec. 11, 2007, at 28:8-

30:10 (emphasis added).  Invoking the same rationale, TEOCO refused to produce copies of

any correspondence (e-mail or otherwise) between Qwest's outside counsel and Mr. Canfield

or other TEOCO employees.

## II.    ARGUMENT.

### A.    There is no such thing as a retroactive attorney-client privilege.

The attorney-client privilege is an exception to the general rule that relevant evidence is

discoverable.  *See United States v. Bryan*, 339 U.S. 323, 331 (1950).  Because they are

exceptions to the general rule, privileges "are not lightly created nor expansively construed, for

they are in derogation of the search for truth."  *United States v. Nixon*, 418 U.S. 683, 710

(1974).  It is appropriate to recognize a privilege "only to the very limited extent that

permitting a refusal to testify or excluding relevant evidence has a public good transcending

the normally predominant principle of utilizing all rational means for ascertaining truth."

*Trammel v. United States*, 445 U.S. 40, 50 (1980) (internal quotation omitted).  The burden of

- 5 -

establishing the applicability of a privilege is on the party asserting it. *Diversified Indus. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977).

Federal common law regarding the attorney-client privilege applies here. *See Hansen v. Allen Mem'l Hosp.*, 141 F.R.D. 115, 121 (S.D. Iowa 1992). The Eighth Circuit has endorsed and adopted Proposed Federal Rule of Evidence 503 (also known as Supreme Court Standard 503), which acknowledges a client's privilege to prevent disclosure of "*confidential* communications made for the purpose of facilitating the rendition of professional legal services to the client." *In re Bieter*, 16 F.3d 929, 935 (8th Cir. 1994) (emphasis added). Communications are "confidential" under Standard 503 only "if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Standard 503, *reprinted in* 56 F.R.D. 183, 235-36 (1972).

Here, any communications between Qwest's counsel and Mr. Canfield were not "confidential," and were not made for the purpose of facilitating professional legal services, because Qwest's counsel did not represent TEOCO until *after* McLeodUSA served a subpoena on TEOCO for testimony and documents--a subpoena that *Qwest required McLeodUSA to serve* by refusing to produce TEOCO for deposition. It is well settled that a party cannot assert the privilege to shield disclosure of communications that occurred prior to the commencement of the attorney-client relationship. *See Hudson v. General Dynamics Corp.*, 186 F.R.D. 271, 277 (D. Conn. 1999) ("There is no such thing as a retroactive attorney client privilege").

### B.    Mr. Canfield may not be considered a Qwest employee because Qwest's counsel did not treat Mr. Canfield as a Qwest employee.

Qwest relies on *Bieter* for the proposition that independent contractors acting within the scope of their retention should be treated as employees for purposes of applying the attorney-

client privilege. (During the meet-and-confer process, Qwest adopted for this dispute a brief that it filed under seal in opposition to a similar motion to compel in unrelated litigation in Denver District Court.) The *Bieter* court held that "when applying the attorney-client privilege to a corporation or partnership, it is inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors." 16 F.3d at 937. McLeodUSA does not challenge the holding or reasoning of *Bieter*, only its applicability to the facts here. Indeed, McLeodUSA initially anticipated that Qwest *would* treat TEOCO and its employees as employees of Qwest, and would produce them for deposition pursuant to notice. Instead, Qwest asserted that it lacked sufficient control over TEOCO to make it available for deposition, requiring McLeodUSA to go through the formal process of issuing a subpoena for testimony and documents. Only when McLeodUSA thereupon served the third-party discovery did Qwest's outside counsel assume representation of TEOCO witnesses. In the process of creating this nuisance for McLeodUSA, Qwest's outside counsel denied the existence of an attorney-client relationship and effectively refuted any presumption that communications between Qwest's outside counsel and TEOCO were made with any expectation of confidentiality or privilege. Where the parties do not believe at the time of the communication that there is an expectation of privilege, the privilege does not apply. For these reasons, *Bieter* is simply inapplicable here, and TEOCO should be compelled to produce, and testify about, its communications with Qwest's outside counsel.

Respectfully submitted,

Warren Anthony Fitch (D.C. Bar No. 089920)
Jason R. Scherr (D.C. Bar No. 466645)
Bingham McCutchen LLP
2020 K Street, N.W.
Washington, D.C. 20006
Tel.    202.373.6000
Fax    202.373.6001
tony.fitch@bingham.com
jr.scherr@bingham.com

ATTORNEYS FOR PLAINTIFF McLEODUSA
TELECOMMUNICATIONS SERVICES, INC.

Dated: January 4, 2008.

A/72366499.1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record by the means indicated below this 4th day of January, 2008:

Via First Class Mail
Douglas P. Lobel
David A. Vogel
COOLEY GODWARD KRONISH LLP
One Freedom Square - Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
dlobel@cooley.com
dvogel@cooley.com

Via First Class Mail
Stephen J. Holtman
SIMMONS, PERRINE, ALBRIGHT & ELLWOOD, P.L.C.
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
sholtman@simmonsperrine.com

A/72366499.1

# EXHIBIT A

**BINGHAM**

Jason R. Scherr
Direct Phone: (202) 373-6709
Direct Fax:    (202) 373-6460
jr.scherr@bingham.com

November 7, 2007

**By Hand Delivery**
TEOCO Corporation
12150 Monument Drive
Suite 400
Fairfax, VA 22033
Attn: Michael McDonnell

Re:  Fed. R. Civ. P. 45 Subpoena *Duces Tecum* in the matter of
     *McLeodUSA Telecommunication Services, Inc. v. Qwest Corp.,*
     *& Qwest Communications Corp.*, No. 06-35 (N.D. Iowa)

Dear Mr. McDonnell:

This firm represents plaintiff McLeodUSA Telecommunications Services in the
referenced matter, currently pending in federal court in Iowa. As you may be aware from
discussions with counsel for Qwest, McLeodUSA has requested a 30(b)(6) deposition of
TEOCO and fact depositions of TEOCO personnel Derek Canfield and Marie Niziolek,
who have been identified as persons knowledgeable about certain matters at issue in the
case. McLeodUSA also requests documents in TEOCO's possession that are relevant to
the parties' disputes.

Qwest's counsel, who is copied on this letter, has advised that McLeodUSA will need to
pursue discovery from TEOCO through formal means, rather than pursuant to notice.
Accordingly, enclosed please find a subpoena *duces tecum* and *ad testificandum* for
TEOCO, and subpoenas *ad testificandum* for Mr. Canfield and Ms. Niziolek. We can
work with you on the dates and times for these depositions and production, but the
discovery period in the underlying case is quickly drawing to a close. I would appreciate
hearing from you by telephone to coordinate this discovery. Thank you.

Sincerely,

Jason R. Scherr
Counsel

JRS/cpm

Enclosures

cc:    David A. Vogel

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
2020 K Street NW
Washington, DC
20006-1806

T 202.373.6000
F 202.373.6001
bingham.com

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

for the _____    DISTRICT OF    the District of Columbia

McLeodUSA Telecommunications Services, Inc.

V.

Qwest Corporation, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 1:06-cv-00035-MWB

N.D. Iowa (Cedar Rapids)

TO: TEOCO Corporation
12150 Monument Drive
Suite 400
Fairfax, VA 22033

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. See Schedule "A" (attached hereto) for deposition topics.
The deposition will be recorded by stenographic means.

| PLACE OF DEPOSITION    Bingham McCutchen LLP, 2020 K Street, NW, Washington, DC 20006 | DATE AND TIME    11/12/2007 9:00 am (or as otherwise mutually agreed) |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See attached Schedule "B" (attached hereto)

| PLACE    Bingham McCutchen LLP, 2020 K Street, NW, Washington, DC 20006 | DATE AND TIME    11/12/2007 9:00 am (or as otherwise mutually agreed) |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE    11-7-07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason R. Scherr
Bingham McCutchen LLP, 2020 K Street, NW, Washington, DC 20006, 202-373-6000 (Attorney for Plaintiffs)

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena is issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

DEFINITIONS

These definitions apply to Schedule A and Schedule B hereto.

a.    The "Litigation" refers to the underlying action in which this subpoena issued, styled *McLeodUSA Telecommunications Services, Inc. v. Qwest Corporation and Qwest Communications Corporation*, Case No. 06-cv-35 (N.D. Iowa).

b.    "McLeodUSA" refers to McLeodUSA Telecommunications Services, Inc.

c.    "Qwest" refers to Qwest Corporation and/or Qwest Communications Corporation and any parent, subsidiary, predecessor, agent, employee or affiliate of either or both, jointly and severally. All references to "Qwest" include each, any and every one of these or other affiliated persons or entities.

d.    "You" refers to TEOCO, its parents, subsidiaries, predecessors, agents, employees or affiliates.

SCHEDULE A

CATEGORIES OF TOPICS FOR CORPORATE DEPOSITION

1.    The scope of your engagement with Qwest, including without limitation the services that you provide to Qwest, the legal relationship and governing documents between you and Qwest, and the interaction between your personnel and those of Qwest.

2.    The exchange of information between you and Qwest, including without limitation the type and form of reports, data or other information supplied by Qwest or otherwise made available to you by or on behalf of Qwest, and the type and form of reports, data or other information supplied by you to Qwest or to others for the benefit of Qwest.

3.    Your activities at any time in connection with charges assessed to, or claims made against, Qwest by McLeodUSA, including without limitation analysis of any invoices from McLeodUSA to Qwest, review of CDRs, AMA records, billing records, or other data bearing on charges for telecommunications services.

4.    Your activities at any time in connection with charges assessed by, or claims or potential claims made or considered by, Qwest to McLeodUSA, including without limitation analysis of any invoices, call records, billing records, or other data relating to charges or claims as between Qwest and McLeodUSA.

5.    Your methodologies for reviewing or analyzing invoices from McLeodUSA to Qwest.

6.    Your discussions with counsel for Qwest in connection with any disputes at issue in the Litigation.

7.    Your targets, goals, purposes, hypotheses, and strategies, or those of Qwest or its counsel of which you have knowledge, in connection with any evaluation, analysis, review, calculation, summary or other activity in connection with the claims of any party in the

Litigation (including but not limited to damages calculations), and the results of each such evaluation, analysis, review, calculation, summary or other activity.

8.    All information requested of you by Qwest or provided by you to Qwest in connection with the Litigation.

9.    All information requested by you of Qwest or provided to you by Qwest in connection with the Litigation.

10.   The authenticity of any documents you produce in response to this Subpoena.

2

## SCHEDULE B

<u>DOCUMENT REQUESTS</u>

1.     All written evaluations, analyses, reports, calculations, summaries, correspondence, or other documents concerning McLeodUSA's claims in the Litigation, whether prepared by you or others.

2.     All written evaluations, analyses, reports, calculations, summaries, correspondence, or other documents concerning Qwest's claims in the Litigation, whether prepared by you or others.

3.     All written evaluations, analyses, reports, calculations, summaries, correspondence, or other documents related in any way to the deposition topics contained herein.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

for the _____    DISTRICT OF    the District of Columbia

McLeodUSA Telecommunications Services, Inc.

V.

Qwest Corporation, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  1:06-cv-00035-MWB

N.D. Iowa (Cedar Rapids)

TO:  Derek Canfield
     TEOCO Corporation
     12150 Monument Dr., Ste. 400
     Fairfax, VA 22033

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.    The deposition will be recorded by stenographic means.

| PLACE OF DEPOSITION   Bingham McCutchen LLP, 2020 K Street, NW, Washington, DC 20006 | DATE AND TIME   11/13/2007 9:00 am (or as otherwise mutually agreed) |
|---|---|

☐  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE   11-7-07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason R. Scherr
Bingham McCutchen LLP, 2020 K Street, NW, Washington, DC 20006, 202-373-6000 (Attorney for Plaintiffs)

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
DATE                                        SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

|     |             |                        |
| --- | ----------- | ---------------------- |
| for the | DISTRICT OF | the District of Columbia |

| | |
|---|---|
| McLeodUSA Telecommunications Services, Inc. | **SUBPOENA IN A CIVIL CASE** |
| V. | |
| Qwest Corporation, et al. | Case Number:[1] 1:06-cv-00035-MWB |
| | N.D. Iowa (Cedar Rapids) |

TO:  Marie Niziolek
     TEOCO Corporation
     12150 Monument Dr., Ste. 400
     Fairfax, VA 22033

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | |
| | DATE AND TIME |
| | |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.    The deposition will be recorded by stenographic means.

| PLACE OF DEPOSITION   Bingham McCutchen LLP, 2020 K Street, NW, Washington, DC 20006 | DATE AND TIME 11/13/2007 2:00 pm (or as otherwise mutually agreed) |
| --- | --- |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
| --- | --- |
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 11-7-07 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason R. Scherr
Bingham McCutchen LLP, 2020 K Street, NW, Washington, DC 20006, 202-373-6000 (Attorney for Plaintiffs)

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

                    DATE                              SIGNATURE OF SERVER

                                                      ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT B

**From:** Vogel, David [mailto:dvogel@cooley.com]
**Sent:** Friday, September 28, 2007 11:23 AM
**To:** Scherr, Jason R.
**Cc:** Lobel, Douglas; Fitch, Warren Anthony; Laing, Hilarie; Taborga, Victoria; Samarias, Joseph
**Subject:** RE: Discovery dates

    Can we split the difference and make initial expert reports due for both sides on Nov. 2 and rebuttals on Dec. 7?  While we confirm a date, let me send you in a little while a proposed filing for today to address the expert deadline.

    I am forwarding to Qwest the names of the additional deponents and will get back to you about schedules, which of course I am going to determine through November.  I also need to check with Qwest and TEOCO to see if you have to serve TEOCO a Rule 45 subpoena.  I'll report back to you when I have some information.

-- David

**David A. Vogel**

Special Counsel

COOLEY GODWARD KRONISH LLP

One Freedom Square  ♦  Reston Town Center

11951 Freedom Drive  ♦  Reston, VA  20190-5656

Tele: (703) 456-8576  ♦  Fax: (703) 456-8100

dvogel@cooley.com  ♦  www.cooley.com/litigation


Assistant:  Victoria Taborga

Tele: (703) 456-8690  ♦  vtaborga@cooley.com


**From:** Scherr, Jason R. [mailto:JR.Scherr@bingham.com]
**Sent:** Thursday, September 27, 2007 1:52 PM
**To:** Vogel, David
**Cc:** Lobel, Douglas; Fitch, Warren Anthony; Laing, Hilarie; Taborga, Victoria; Samarias, Joseph
**Subject:** RE: Discovery dates

David:

    We agree that we should file something with the court tomorrow, but I'd like to talk with you about the additional two weeks you propose for expert reports.  We do not anticipate a jamming problem on that front at the end of October.  The only reason we suggested an extension of the September 28 date at all was that Qwest will be raising new issues on October 5 that McLeodUSA cannot anticipate in its initial expert report.  Qwest, of course, already knows what those issues will be, and therefore is not prejudiced.  Any argument that McLeodUSA makes in its response to the October 5 brief will be based on Qwest's argument, so I'm not sure that there is any need to delay expert reports until after that responsive filing.  Let's try to talk about that tomorrow morning.

    We can tell you no later than Monday 10/8 whether we'll need the additional time for Easton on Wednesday

# EXHIBIT C

**Scherr, Jason R.**

| | |
|---|---|
| **From:** | Scherr, Jason R. |
| **Sent:** | Tuesday, October 16, 2007 10:56 AM |
| **To:** | 'Vogel, David' |
| **Cc:** | 'Samarias, Joseph'; 'Lobel, Douglas'; Fitch, Warren Anthony |
| **Subject:** | Deposition scheduling |

David:

Here's our current thinking on the depositions we discussed yesterday.

McLeodUSA witnesses
1. Jerome Decuir is available for deposition on October 23, as we discussed.
2. Greg Hagerman is available October 25.
3. Patty Lynott is available October 30 or November 13 or 14. We have a conflict on October 30, but we believe that we can still cover Lynott's deposition if that date is preferable.

Qwest witnesses
4. We can confirm Waldron and Bayer for November 13-14, exact times to be determined.
5. We have a conflict on October 30 that will prevent us from taking depositions in Denver that day. Tony will be taking the Denver depositions (and I am unavailable on October 30), but he has a hearing that day in another case that cannot be rescheduled. (Tony also has jury duty on October 29, but we do not anticipate that impacting the remainder of the week.) We are willing to take the depositions October 31-November 1, although we recognize that you had requested avoiding Halloween. Please let us know if you think you can work something out for that week.

If not, then given Mr. Gray's unavailability November 5-9, it looks like we will have to schedule the depositions during the week of November 12, including Monday if necessary, subject to Ms. Finley's availability. If we all keep our schedules open for that week until Ms. Finley can identify a date that works best for her, then I'm sure we can work it out. Alternatively, we are available during the week of November 5, and if we can work out alternate arrangements for Mr. Gray (and everyone else is available), then we can move forward November 6, 7, 8 or 9 with Finley, Armstrong, Hanson and Beck. Perhaps Qwest would be willing to produce Mr. Gray in DC, particularly if all of the witnesses would otherwise be available October 31-November 1. Please let us know.
6. As noted above, we still would like to depose Hanson and Beck, so you and I should discuss that today. If you anticipate that you will file a motion to quash the deposition notice, we will be happy to put our rationale in writing for you. Please advise.
7. We will subpoena TEOCO directly, as well as Canfield and Niziolek, but we would appreciate you letting us know when you hear back from TEOCO's attorneys.
Thanks.


Jason R. Scherr
Bingham McCutchen LLP | 2020 K Street, NW, Washington, DC 20006
202.373.6709 - TEL | 202.373.6001 - FAX |bingham.com

The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email

# EXHIBIT D

## Scherr, Jason R.

**From:**   Vogel, David [dvogel@cooley.com]
**Sent:**    Wednesday, November 07, 2007 2:11 PM
**To:**       Scherr, Jason R.
**Cc:**       Samarias, Joseph; Laing, Hilarie; Bolton, Eric; Taborga, Victoria; Lobel, Douglas; Fitch, Warren Anthony
**Subject:** RE: Scheduling issues

J.R.:

I want to follow-up specifically on a couple of points. We still haven't received a formal notice for the Hansen and Beck depositions, which Tony told me (on Oct. 25) you all would provide so that Qwest had a basis to file a motion with the Court. I've been prepared to file that motion for some time, but am still waiting on the formal notices.

Please let me have a copy of whatever subpoena you serve on TEOCO. I have not been authorized by TEOCO to accept service.

I am working to get availability on Ms. Armstrong, which has been in a state of flux. Can you tell me how long you expect her deposition to last? That will let me know if we need one or two days of her time. Unfortunately, Ms. Finley is largely detached from work, dealing with her husband's illness, and inquiries about her availability have not been answered yet.

As to next week in Columbus, let us confirmed to start the depositions on the morning of Wednesday the 14th. Do you expect they will both exceed more than one day? If so, when on the next day would you expect to be done?

**David A. Vogel**

Special Counsel

COOLEY GODWARD KRONISH LLP

One Freedom Square  ♦  Reston Town Center

11951 Freedom Drive  ♦  Reston, VA  20190-5656

Tele: (703) 456-8576  ♦  Fax: (703) 456-8100

dvogel@cooley.com  ♦  www.cooley.com/litigation


Assistant:  Victoria Taborga

Tele: (703) 456-8690  ♦  vtaborga@cooley.com


**From:** Scherr, Jason R. [mailto:JR.Scherr@bingham.com]
**Sent:** Monday, November 05, 2007 12:25 PM
**To:** Vogel, David
**Cc:** Samarias, Joseph; Laing, Hilarie; Bolton, Eric; Taborga, Victoria; Lobel, Douglas; Fitch, Warren Anthony
**Subject:** RE: Scheduling issues

Hi David. Here goes.

Depositions.
1.   I have passed along to Todd Lechtenberg and Patty Lynott your request for dates and I will let you know when

I have their schedules.

2.   We confirmed the Waldron and Bayer deposition dates two weeks ago, but if you can't make it, we can be flexible. I'm not opposed to doing the depositions on Thursday, November 15, but I have to fly back Thursday night, so they can't run over. I suspect that it won't be a problem, but please let me know if you can start Wednesday afternoon if it looks like we'll need the extra time.

3.   We also proposed next week for Gray, Finley, Armstrong, Hanson and Beck. We understand that Ms. Finley will be unavailable for the next several weeks, and that you intend to move for a protective order with respect to Hanson and Beck (see below). That leaves us scheduling Gray and Armstrong in Denver. If the parties are going to settle and dismiss the IRU claims, however, we can probably skip Gray. Can you confirm that the IRU claims are out of the case? If so, then we just need dates for Armstrong, and fallback dates for Hanson and Beck. We could make it out to Denver later this week, if you're available. Next week is still fine, if someone else can cover while you're in Ohio. And we could do the Monday or Tuesday of Thanksgiving week as well.

Expert reports

   Where is yours? We did not receive anything from you.

Hanson & Beck

   We still want to depose Hanson & Beck. We understand your objection to be that they have been involved only in the aspect of these disputes in which our respective clients have discussed resolution of the claims, and that therefore, they do not possess relevant information. You characterized it as settlement talks, although I'm not sure that's necessarily accurate. But even were it true that these men were involved only in the negotiations between McLeodUSA and Qwest with respect to investigating and resolving these claims, I don't see how that means they can't be deposed. We don't want to ask them about their legal advice. We would conduct discovery into what they knew when they did or did not respond to questions from McLeodUSA, what they did in response to questions or information from McLeodUSA, and what information they used to support the positions that they took in discussions. There's nothing improper about that.

   In addition, we have a lot of questions about Qwest's sales practices, policies and products, and we understand Hanson in particular to have a great deal of knowledge in that area as head of one of Qwest's sales departments. The fact that other depositions haven't been littered with his name indicates only that he wasn't centrally involved in the other areas addressed in McLeodUSA's 30(b)(6) notice. We conducted the 30(b)(6) depositions first because we thought it more efficient, but we easily could have started with the fact depositions, in which case Hanson's would have been noticed months ago.

TEOCO

   We anticipated that you would let us know when TEOCO's attorneys responded to your inquiry about making TEOCO witnesses available through Qwest. We are still proceeding directly, but would appreciate hearing from you in that regard.

Jason R. Scherr
Bingham McCutchen LLP | 2020 K Street, NW, Washington, DC 20006
202.373.6709 - TEL | 202.373.6001 - FAX |bingham.com

The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

1/4/2008

# EXHIBIT E

**Scherr, Jason R.**

| | |
|---|---|
| **From:** | Vogel, David [dvogel@cooley.com] |
| **Sent:** | Friday, November 09, 2007 11:55 AM |
| **To:** | Scherr, Jason R. |
| **Cc:** | Fitch, Warren Anthony; Young, Steven; McDonnell, Michael; Lobel, Douglas; Samarias, Joseph; Laing, Hilarie |
| **Subject:** | RE: |

J.R.:

I have been asked by TEOCO to coordinate this for them, and I need a little time to jump through the procedures of opening a client/matter, getting Qwest's permission, etc. So, you should directly your scheduling issues to me.

But this still begs the brooding question -- do we need to extend the discovery cutoff. I don't think we can move the summary judgment deadline, but I'm not sure any remaining discovery will affect anyone's briefs (other than Patty, which is another reason we very much need her before Thanksgiving).

David A. Vogel
Special Counsel
COOLEY GODWARD KRONISH LLP
One Freedom Square * Reston Town Center
11951 Freedom Drive * Reston, VA 20190-5656
Tele: (703) 456-8576 * Fax: (703) 456-8100
dvogel@cooley.com  *  www.cooley.com/litigation

Assistant: Victoria Taborga
Tele: (703) 456-8690 * vtaborga@cooley.com


-----Original Message-----
From: Scherr, Jason R. [mailto:JR.Scherr@bingham.com]
Sent: Friday, November 09, 2007 11:44 AM
To: Vogel, David
Cc: Fitch, Warren Anthony; Young, Steven; McDonnell, Michael; Lobel, Douglas;
Samarias, Joseph; Laing, Hilarie
Subject: RE:

David:
        Take it easy. I spoke with Mr. McDonnell directly on Wednesday and he understands that the dates are placeholders, even if that hadn't been apparent from the "or otherwise agreed" language on the face of the subpoenas. I'm sure that he and I will work out an acceptable arrangement, and I'll be happy to keep you informed of the deposition date(s).
        I see that I have another e-mail from you, to which I will respond shortly.


Jason R. Scherr
Bingham McCutchen LLP | 2020 K Street, NW, Washington, DC 20006
202.373.6709 - TEL | 202.373.6001 - FAX |bingham.com

The information in this transmittal (including attachments, if any) is

1

# EXHIBIT F

1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF IOWA

CEDAR RAPIDS DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - -x

McLEODUSA TELECOMMUNICATIONS :

SERVICES, INC.,                      :

                                     :

              Plaintiff,         :

                                     :

       vs.                       :   Civil Action No.

                                     :     06-CV-35

QWEST CORPORATION and            :

QWEST COMMUNICATIONS             :

CORPORATION,                         :

                                     :

              Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - -x

                   Reston, Virginia

                   Tuesday, December 11, 2007

Deposition of:

              (TEOCO CORPORATION)

       30(b)(6) DEREK CANFIELD,

Canfield 30 (b) (6), Derek                    December 11, 2007
                        Reston, VA

2

1    the witness, was called for examination by counsel

2    for the Plaintiff, pursuant to notice, commencing

3    at 10:35 a.m., at the law offices of Cooley

4    Godward Kronish LLP, One Freedom Square, 11951

5    Freedom Drive, Suite 1500, Reston, Virginia,

6    before Dawn A. Jaques, Certified Shorthand

7    Reporter and Notary Public in and for the

8    Commonwealth of Virginia, when were present on

9    behalf of the respective parties:

10   APPEARANCES:

11

12

13

14

15

16

17

18

19

20

21

22

Canfield 30 (b) (6), Derek                          December 11, 2007
                              Reston, VA

3

1          On behalf of the Plaintiff:
2                 WARREN ANTHONY FITCH, ESQ.
3                 ROBIN F. COHN, ESQ.
4                 Bingham McCutchen LLP
5                 2020 K Street, N.W.
6                 Washington, D.C.  20006-1806
7                 PHONE:     (202) 373-6695
8                 FAX:       (202) 373-6001
9                 E-MAIL:   Tony.fitch@bingham.com
10                          robin.cohn@bingham.com
11
12         On behalf of the Defendants:
13                DAVID A. VOGEL, ESQ.
14                Cooley Godward Kronish LLP
15                One Freedom Square
16                Reston Town Center
17                11951 Freedom Drive
18                Reston, Virginia  20190-5656
19                PHONE:    (703) 456-8576
20                FAX:      (703) 456-8100
21                E-MAIL:  Dvogel@cooley.com
22

Canfield 30 (b) (6), Derek                    December 11, 2007
                    Reston, VA

                                                              27

1    purposes, labeled number 4 in the document.

2              THE WITNESS:  Okay, it's opened.

3              BY MR. FITCH:

4         Q    And do you see the full title up top is

5    "Q2 McLeodUSA Wireless Insertion Interstate

6    Traffic"?

7         A    **I do, yes.**

8         Q    Do you want to scroll through this?

9         A    **Okay.**

10        Q    There are two tabs, right, interstate

11   summary and interstate details?

12        A    **That is correct.**

13        Q    Why don't we look at interstate details

14   first.

15        A    **Okay.**

16        Q    Did you -- on TEOCO's behalf, did Derek

17   Canfield have some personal involvement in this

18   spreadsheet?

19        A    **I did.**

20        Q    And did you do this spreadsheet at

21   Mr. Argall's direction?

22        A    **I'm not sure whether it was Mr. Argall's**

Canfield 30 (b) (6), Derek                    December 11, 2007
                    Reston, VA

28

1    or counsel's.

2        Q    When was this spreadsheet generated?

3        A    There were a couple of different

4    iterations on the spreadsheets.  I believe one was

5    done sometime in third quarter of 2006, and I

6    believe that there was an update completed

7    sometime in 2007.

8        Q    What is the analysis that's being

9    reflected and reported in this spreadsheet?

10       A    The amount of charges that McLeod has

11   billed to Qwest for the interstate jurisdiction

12   for wireless originated traffic.

13       Q    And what instructions did TEOCO receive

14   when it was given this assignment?

15           MR. VOGEL:  Hang on.  I'm going to

16   object to the form of the question,

17   "instructions."  I'm going to object to the extent

18   the question is asking you to reveal your

19   communications with counsel, but if you can answer

20   otherwise, go ahead.

21           THE WITNESS:  I believe this was all

22   pertinent to discussion with counsel.

Canfield 30 (b) (6), Derek                    December 11, 2007
                    Reston, VA

29

1           BY MR. FITCH:

2      Q    What counsel are you referring to in

3  that regard?

4      **A    Our outside counsel, Mr. Vogel and his**

5  **firm.**

6      Q    When did you personally first meet

7  Mr. Vogel?

8           MR. VOGEL:  Object to form.

9           THE WITNESS:  Through any form of

10  communication?

11          BY MR. FITCH:

12     Q    Yes.

13     **A    Would have been -- I don't know specific**

14  **dates, but, again, would have been in that 2006**

15  **time period.**

16     Q    Do you know whether TEOCO at that point

17  in time had engaged Mr. Vogel's firm to represent

18  TEOCO?

19          MR. VOGEL:  To represent TEOCO?

20          MR. FITCH:  Uh-huh.

21          MR. VOGEL:  Represent TEOCO in what?

22          MR. FITCH:  In anything.

Canfield 30 (b) (6), Derek                    December 11, 2007
                              Reston, VA

30

1          THE WITNESS:  It's my understanding that

2   TEOCO has not engaged Mr. Vogel's firm, rather is

3   supporting Qwest in its relationship with

4   Mr. Vogel's firm.

5          BY MR. FITCH:

6      Q    What was your understanding of the

7   analysis that you were to make in this

8   spreadsheet?

9          MR. VOGEL:  I'm going to object because,

10  again, that calls for privileged communications.

11  I just recommend that maybe you ask him what this

12  spreadsheet shows or how it goes about showing it,

13  make it factual as opposed to asking about

14  instructions from lawyers.

15         BY MR. FITCH:

16     Q    Well, I maintain my question, and I

17  think both sides will just have to reserve their

18  rights with respect to the assertion of privilege,

19  but I don't want to get hung up on it this

20  morning.

21         In column I there's a figure of .22 for

22  the percent local switching, correct?

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MCLEODUSA TELECOMMUNICATIONS SERVICES, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Misc. Action No. _____** |
| | ) | |
| **v.** | ) | **<u>Related to</u>** |
| | ) | **Civil Action No.:  06-CV-35** |
| **QWEST CORPORATION AND** | ) | **United States District Court** |
| **QWEST COMMUNICATIONS CORP.** | ) | **For the Northern District of** |
| | ) | **Iowa (Cedar Rapids Division)** |
| **Defendants.** | ) | |
| | ) | |

**PROPOSED ORDER ON PLAINTIFF MCLEODUSA'S MOTION TO COMPEL
AND TO ENFORCE SUBPOENA**

Upon the motion of Plaintiff McLeodUSA Telecommunications Services to compel

production of documents and testimony from TEOCO, filed January 4, 2008, any responses

thereto and any hearing thereon, it is hereby ORDERED that:

1.     TEOCO shall appear through one or more witnesses on a date agreeable to

McLeodUSA not later than February 1, 2008 for the purpose of continuing its 30(b)(6)

deposition and responding to questions regarding communications between TEOCO

personnel and outside counsel for Qwest; and

2.     TEOCO shall, within two weeks of the date of this Order, produce copies of all

written communications between TEOCO personnel and outside counsel for Qwest

relating to the subject matter of the McLeodUSA/Qwest litigation.

SO ORDERED THIS __ DAY OF _____, 2008.

_____
U.S.D.J.

A/72372811.1